**Eugene LIU, Plaintiff–Appellee,**

**v.**

**T & H MACHINE, INC., Defendant–Appellant.**

**No. 98–2916.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1999.

Decided Sept. 14, 1999.

Michael L. Brooks (argued), Chicago, IL; Frederick M. Lerner, Chicago, IL, for Plaintiff–Appellee.

Paul F. Conarty (argued), Wheaton, IL, ·for Defendant–Appellant.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Eugene Liu is a Chinese–American resident of Los Angeles, California. He contracted with T & H Machine, Inc. ("T & H"), a manufacturer of tube mills located in Addison, Illinois, to help T & H get a contract to build a tube mill in the city of Chengdu in the People's Republic of China. Using his business contacts in China, Liu brokered the deal and T & H landed a tube mill contract worth more than three million dollars. A dispute arose about Liu's compensation. When the parties found themselves unable to agree, Liu filed this diversity lawsuit to be decided under Illinois law, alleging that T & H breached the contract between them, seeking $102,902 in damages, ten percent interest as per the contract, and reasonable attorneys' fees and costs available under the Illinois Sales Representative Act, 820 ILCS 120/1, et seq. The district court granted Liu summary judgment on all counts, awarding him $144,318 plus attorneys' fees and costs, and T & H appeals. We affirm.

## I.

In 1992 Liu undertook to assist some business contacts in China to help locate a manufacturer for a tube mill plant to be built in Chengdu. He contacted a number of tube mill manufacturers in this country, including T & H, and toured their facilities in October 1992. During his visit to the T & H plant in Addison, Illinois, Liu spoke with Water R. Heller, Sr., President of T & H, and Rabinda De, an "inside" T & H salesperson. They discussed trying to obtain a contract with a Chinese customer for T & H. That November, Liu and Heller, on behalf of T & H, met in Addison and orally contracted to pay Liu seven percent of the price of the tube steel mill if the Chengdu deal went through, although it was understood that the amount, terms, and various details of the payments were to be finalized later. Liu and De visited China later that month and met with Liu's customer, a consortium including the Chi-na National Technical Import & Export Corporation, the Southwest Technical Import & Export Corporation and the Chengdu Cold Rolling Steel Mill (the "Consortium") to bid for the order. During the bidding, on November 21, 1992, De reduced the Liu commission agreement (the "fall contract") to writing on a handwritten sheet, although this writing was still not final. Liu acted in T & H's interests in the negotiations and two days later, T & H signed an agreement (the "Chengdu contract") with the Consortium to build a tube mill for $3,010,000. Under the fall contract, Liu was then due $210,700.

In December 1992 or March 1993—it is not clear which—Liu returned to T & H's plant in Addison to finalize the terms and conditions of the fall contract, which was either modified in several important respects (according to Liu) or replaced by a novation (according to T & H). Liu wanted his payments split between himself and several associates whom he said had assisted him in arranging the Chengdu contract. Pursuant to this understanding, T & H executed four documents (the "agreements to pay"), signed by Heller as President of T & H, agreeing to pay Liu $50,000, and his Hong Kong Associates as follows: Sealam International Co., $150,000, Sun Mean, $60,300, and Nicesun Development, Ltd., $86,400, for a total of $346,700. Payments were to be made progressively within five business days of T & H's receipt of payment from the Consortium in connection with the Chengdu contract. All amounts payable were subject to a 10% per annum late fee stipulated in each document. These documents comprised part of the subsequent agreement with Liu (the "winter contract"). For the purposes of this case it does not matter whether the winter contract was a modification of the fall contract or a novation.

Thereafter, in late 1993 or early 1994, a dispute arose between Liu and Nicesun regarding the commission payments. To avoid possible duplicate liability for T & H, in April 1994 Liu and T & H agreed in

writing that the monies owed to Nicesun would be placed in an escrow account until the matter was resolved, and until then Liu waived interest on the amounts due Nicesun. T & H also agreed in writing to continue to pay Liu, Sun Mean, and Sealam the money still due them. By May 16, 1994, T &`H had received $2,709,000 from the Consortium and about this time, it paid $135,00 to Sealam and $54,270 to Sun Mean, about 90% of what they were owed under the winter contract. T & H never deposited any monies due to Nicesun into escrow, and made no payments to Nicesun or to Liu, even after Liu informed T & H that his dispute with Nicesun had been settled, because T & H was unpersuaded that this was really true. T & H made no further payments to any of the other parties after May 1994, although it received another $67,000 from the Consortium in 1995. The Consortium has paid $2,776,000 on the Chengdu contract, or 92.2% of the amount agreed upon, but refuses to pay any more because it claims that T & H's work was defective. The parties do not expect that the final 7.8% will be paid.

Liu sued for his unpaid commissions in October 1996, raising contract and Illinois Sales Representative Act claims. After filing the complaint, he received reassignments from Sun Mean, Sealam, and Nicesun, giving him the right to proceed against T & H for any monies due them under the winter contract. Liu filed an amended complaint by leave of the court in January 1998, which added reference to the reassignments as well. In June 1998, the district court found for Liu, and this appeal followed.

## II.

■ In a diversity case we apply federal procedural law and state substantive law. *Dawn Equipment Co. v. Micro–Trak Systems, Inc.*, 186 F.3d 981, 986–87 (7th Cir.1999) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). T & H first argues that the trial court should not have allowed Liu to amend his pleadings. Leave to amend is to be "freely given when justice so requires." *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir.1998); Fed.R.Civ.P. 15(a). We review the district court's decision to allow amendments to pleadings for abuse of discretion. *Crim v. Bd. of Ed. of Cairo School Dist. No. 1*, 147 F.3d 535, 548 (7th Cir.1998). Leave to amend need not be given if there is an apparent reason not to do so, such as " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.' " *Payne*, 161 F.3d at 1036 (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). T· & H seems to argue that it was prejudiced by the district court's grant of the motion to amend because it was "irrevocably committed to a theory of defense based on the legal affect [sic] of the pleadings *on file*" (emphasis in original). But even if T & H was prejudiced, it was not *unduly* prejudiced. Because Liu maintained that he was entitled to the full amount on the same grounds, the amended pleading involved substantially the same issues and theories as the original pleading. While similarity of issues and theories is not required for a permissible amendment, it militates against a finding of abuse of discretion. We find none here.

■ We review the district court's grant of summary judgment de novo, *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir.1999), viewing the record and all reasonable inferences to be drawn from it in the light most favorable to the non-moving party. *Fulk v. United Transportation Union*, 160 F.3d 405, 407 (7th Cir.1998). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir.1999); Fed. R.Civ.P. 56(c). The non-moving party may

not rest only upon the allegations set forth in the pleadings, but must come forward with specific facts sufficient to raise a genuine issue for trial. *Shermer v. Illinois Dep't of Transportation*, 171 F.3d 475, 477 (7th Cir.1999) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

T & H argues first that the district judge erred in granting Liu summary judgment because there was a genuine issue of material fact in dispute as to whether it had a contract with Liu and his associates at all. In determining whether a valid agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The state substantive law to be applied in this case is undisputedly the law of Illinois. In Illinois, the question of the parties' intent as to contract formation is a factual question, *Wagner Excello Foods, Inc. v. Fearn Internat'l, Inc.*, 235 Ill.App.3d 224, 176 Ill.Dec. 258, 601 N.E.2d 956, 961 (1992), but once the plaintiff produces evidence establishing a prima facie case that a contract exists, Illinois law shifts the burden of production to the defendant to offer any evidence to the contrary. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 253 (7th Cir.1996) (*citing Ambrose v. Thornton Township School Trustees*, 274 Ill.App.3d 676, 211 Ill.Dec. 83, 654 N.E.2d 545, 550 (1995)).

Liu has produced such evidence and T & H's rebuttal is unpersuasive. T & H says that it "specifically denied" in its pleadings that it was aware that Liu had engaged any associates to obtain the Chengdu contract and that Liu's deposition testimony indicates that these associates came into the contract only in December, after the Chengdu contract was executed. With respect to T & H's knowledge of Liu's associates, a bald and unsupported denial will be insufficient to survive a summary judgment motion. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir.1998). Moreover, it is uncontested that T & H agreed in writing to pay these associates large sums of money in connection with the Chengdu contract, and did pay them much of that money. In view of this, T & H has not produced evidence on which the jury could reasonably find for the defendant on this issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The significance of T & H's argument about the timing of the associates' involvement with the project is unclear. Perhaps T & H means to suggest that there was some sort of failure of consideration if the associates were involved after the Chengdu contract was complete because past consideration provided by Liu alone will not support obligations later incurred to the associates. We are not obliged to guess at a party's meaning, however, and arguments insufficiently developed on appeal are waived. *Pitsonbarger v. Gramley*, 141 F.3d 728, 738 (7th Cir.1998). We do note, however, that there is no legal requirement that Liu's associates had to do anything for a contract requiring payment to them to exist. It would have been sufficient consideration had Liu alone arranged the Chengdu contract even if Liu wanted his compensation paid in whole or in part to others. *See Canel and Hale, Ltd. v. Tobin*, 304 Ill.App.3d 906, 238 Ill. Dec. 64, 710 N.E.2d 861, 869 (1999) ("Generally, any act or promise that is of benefit to one party or disadvantage to the other constitutes sufficient consideration to support a contract.").

T & H appears to argue that Liu cannot assert the rights of his associates to payment under the contract.[1] As near as we

---

1. T & H frames this argument with the claim that the Liu contract was a contract for personal services. He further argues that the obligation to perform under such a contract cannot be delegated, although the right to compensation may be assigned. The point of

can tell, T & H contends that if Liu assigned some of his contractual rights to compensation to his associates who are not parties to this lawsuit, then Liu had no "demonstrable" authority to prosecute the suit on their behalf. But this ignores the associates' reassignment to Liu of the right to proceed against T & H for any monies due them in connection with the winter contract, which Liu added to this lawsuit in his amended complaint. If these reassignments are valid, Liu had demonstrable authority. T & H concedes that Liu may assign his rights under the winter contract, so the force of the objection depends entirely upon T & H's attack on the validity of the associates' reassignment of these rights to Liu.

T & H has two objections to these reassignments. First, it disputes the authority of the signatories of the reassignments and the bona fides of their notarized signatures, apparently alleging that the authenticity of the signatures could not be determined because they were signed in Chinese characters. T & H claims that because the trial court allowed the reassignments to be pled three weeks before the motions for summary judgment were required to be filed, T & H was deprived of an opportunity to develop the evidence it needed to support these challenges. T & H does not dispute that each of these assignments was delivered to T & H's attorney within a month of their execution—that is, at the latest, by the end of September 1997, at least three months before Liu filed his amended complaint. In addition, T & H seems to misunderstand the burden of a party opposing a summary judgment motion. We must therefore restate some first principles.

Once a motion has been filed for summary judgment, the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Vector–Springfield Properties, Ltd. v. Central Illinois Light Company, Inc.,* 108 F.3d 806, 809 (7th Cir.1997) (*citing Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Id.* A party must present more than mere speculation or conjecture to defeat a summary judgment motion. *Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 107 F.3d 1250, 1255 (7th Cir.1997) (internal citations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact. *Weeks v. Samsung Heavy Industries Co., Ltd.,* 126 F.3d 926, 933 (7th Cir.1997) (*citing Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Rather, a genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* The burden on the non-movant is not onerous. He need not tender evidence in a form that would be admissible at trial; he may rely on affidavits or any other materials of the kind identified in Rule 56(c). *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994) (*citing Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). Moreover, the non-movant need not match the movant witness for witness, nor persuade the court that his case is convincing; he need only come

this claim is unclear to us. It cannot be that Liu improperly delegated performance of a personal service contract to his associates, and therefore somehow forfeited his right to compensation. T & H asserts that those associates did nothing to bring about the Chengdu contract, which implies that Liu did not delegate any performance under that contract to them. However, nothing seems to rest on this issue, which we therefore set aside, al-

though we cannot refrain from remarking that neither the fall nor the winter contract is a personal service contract. *See Ames v. Sayler,* 267 Ill.App.3d 672, 205 Ill.Dec. 223, 642 N.E.2d 1340, 1342 (1994) (such a contract is one where "a particular person is necessary for the performance of a contract duty"). Here, Liu acted as a commercial broker or sales representative, a normally fungible position.

forward with appropriate evidence demonstrating that there is a pending dispute of material fact. *Id.* (*citing Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505). But he must do that much. T & H has not done this with the issue before us.

A bald denial that the reassignments were validly executed by persons authorized to do so "could not lead a rational trier of fact to find for the non-moving party," *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir.1997) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). If the problem with determining the bona fides of the signatures is supposed to be that they were written in Chinese characters which could not be read by anyone at T & H (a firm which had been doing business in China for at least four years, and which is located in Addison, Illinois, less than 20 miles from Chicago, a city with many universities employing scholars able to read Chinese if there is no one in Addison who could do so), that is not evidence that they are not valid but mere speculation or conjecture. The "evidence" T & H introduces to raise doubts about the authority of the persons who executed the reassignments to do so is the claim that Nicesun's attorneys stated that the parties who executed the agreements to pay—not the reassignments—lacked authority to do so.[2] No record citation is provided beyond a reference to T & H's answer, and the party opposing a summary judgment motion may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.1998) (*citing Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). In any case, even were we able to find the relevant documents in the record, it is unclear why anything pertaining to the parties' authority concerning the agreements to pay—that is, the documents included in the winter contract—would bear upon the authority of the parties to reassign their rights to Liu.

T & H attacks the validity of the reassignments, further, on the grounds that they were not gifts, as the district court treated them, but "manufactured documents designed to enable [Liu] to avoid the affect [sic] of the . . . documents by which he had [assigned various sums] . . . to his associates." T & H claims, somewhat mysteriously, that the reassignments were somehow contracts which failed for lack of consideration and that T & H has standing to challenge these reassignments because it was "in privity" with Liu's associates. Liu, for his part, asserts that the reassignments were supported by adequate consideration.

■ A chose in action is in general assignable under Illinois law, by gift or otherwise. *See Saltzberg v. Fishman,* 123 Ill.App.3d 447, 78 Ill.Dec. 782, 462 N.E.2d 901, 905 (1984); *Savage v. Gregg,* 150 Ill. 161, 37 N.E. 312, 314 (1894). A gift is a voluntary transfer of property to another made gratuitously and without consideration, *In re Marriage of Flatow,* 102 Ill. App.3d 859, 58 Ill.Dec. 273, 430 N.E.2d 215, 219 (1981) (*citing* Black's Law Dictionary 619 (5th ed.1979)), and the concept of failure of consideration does not apply to gifts. *Id.* If we accept T & H's characterization of the reassignment documents, they were a voluntary transfer of property made without any consideration. Accordingly, they were gifts to Liu of the associate's rights to compensation, regardless of the purpose for which they were made or "manufactured." If so, failure of consideration does not apply. If Liu is right, there was sufficient consideration given. In any event, T & H lacks standing to attack any problems with the reassignment. *See Town of Northville v. Village of Sheridan,* 274 Ill.App.3d 784, 211 Ill.Dec. 362, 655 N.E.2d 22, 24 (1995) ("A proponent must assert his own legal rights and interests,

---

2. The agreements to pay were executed solely by Heller for T & H.

rather than basing his claim for relief upon the rights of third parties.").

 T & H's final argument under the contract is that there is a genuine dispute of material fact as to whether Liu waived the 10% interest provided for in the agreement to pay Nicesun. In attempting to help T & H avoid multiple liability during his dispute with Nicesun in late 1993 or early 1994, Liu had agreed to waive interest payments on the amounts due to Nicesun if T & H deposited the disputed amounts into an escrow account. T & H admits that it never deposited any money into the escrow account, either while the dispute was occurring or after Liu assured them it was over, but, T & H says this was because it had some evidence that Liu's representation that the matter had been resolved was untrue. The district court held that the deposit of the funds in the escrow account was a condition precedent to the waiver of interest and therefore, since no funds were ever deposited, Liu never had any obligation to waive the interest. *See Maywood Proviso State Bank v. York State Bank and Trust Co.*, 252 Ill.App.3d 164, 192 Ill.Dec. 123, 625 N.E.2d 83, 87 (1993) (In Illinois law, a condition precedent is defined as "an event which must occur, or an act which must be performed by one party to an existing contract before the other party is obligated to perform.").

 T & H seems to argue that the agreement here in question involved a promise rather than a condition, although it does not say so in as many words. It points us to some testimony by one Jeffrey Bandel, which it describes as "the only evidence regarding the interest waiver issue," and which it says the district court improperly ignored. Whether an act is necessary to the formation of the contract or to the performance of an obligation depends upon the facts of the case. *Lyntel Products, Inc. v. Alcan Aluminum*

*Corp.*, 107 Ill.App.3d 176, 63 Ill.Dec. 4, 437 N.E.2d 653, 656 (1982). Bandel's testimony does not support T & H's claim.[3] However, Illinois follows Williston's classic rule that " '[w]here it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise.' " *LaGrange Federal Savings and Loan Ass'n v. Rock River Corp.*, 97 Ill.App.3d 712, 53 Ill.Dec. 112, 423 N.E.2d 496, 501 (1981) (*quoting* Restatement [First] of Contracts, § 261 (1932)). The language of the agreement simply says that the funds will be paid into an escrow account and that Liu agrees to waive the interest. Under Illinois law, this simple conjunction does not create a condition precedent. A condition precedent must be stated expressly and unambiguously. The error was harmless, however, because T & H admits that it never paid any money into the escrow account. It was therefore in breach of contract and Liu is entitled to damages, which he requested when he asked for the interest as due him.

## III.

 The final dispute concerns attorneys' fees and costs. Under the Illinois Sales Representative Act, 820 ILCS 12¾ *et seq.* (the "Act"), a principal who fails to pay a sales representative his commission in a timely way shall be liable for his attorneys' fees and court costs. *Id.* 120/3. T & H argues that Liu was not a "sales representative" under 120/1(4) (" 'Sales representative' means a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission . . . ."). The argument is essentially, first, that Liu represented the Chinese Consortium and not T & H, and second, that his payment under the winter contract was not a commission. T & H claims that Liu "was engaged by and worked on behalf of" the Consortium rath-

---

3. And we do not appreciate being directed to read 28 pages of deposition testimony instead of being referred to the few relevant lines.

er than T & H, but this does not explain why he was paid by T & H, with whom he executed at least one contract—two, on T & H's story—and not the Consortium, with whom he executed no contracts revealed by the record before us. The fact that Liu sought the best deal for himself is immaterial. The Act does not require that a sales representative be an altruist nor impose upon him the duties of a fiduciary. Liu solicited the Chengdu contract for T & H and he had a contract to do so. That is sufficient to fall within the definition of "sales representative."

■ T & H next argues that if Liu had originally been a sales representative, he ceased to be one when, under the winter contract, his compensation was no longer expressed as a percentage of the price of the Chengdu contract because that meant that he was not being paid on commission. T & H acknowledges that the fall contract calculated his compensation as a percentage of the price of the Chengdu contract, and that provision falls within the statutory definition of commission under the Act. See 820 ILCS 120/1(1) (" 'Commission' means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales or as a percentage of the dollar amount of profits."). T & H now asserts, however, that the winter contract calculated his compensation as a fixed amount, and removed him from the Act because he was no longer compensated on a commission basis. This argument was not raised in the district court, and is waived. *Okaw Drainage Dist. of Champaign and Douglas County, Ill. v. National Distillers and Chemical Corp.*, 96 F.3d 1049, 1054 (7th Cir.1996). Liu was therefore a sales representative and entitled to attorneys' fees and costs under the Act for untimely payment of his commission.

The long and short of it is that T & H promised to pay Liu certain amounts for acting as its sales representative in arranging a three million dollar contract, and

it did not keep its promise. Instead of paying what it was contractually obligated to pay, it forced Liu to sue for the monies which were clearly and unambiguously owed him under the contract. Liu is entitled to prompt payment of those monies and to his attorneys' fees and costs under the Act.

We therefore AFFIRM the judgment of the district court in granting summary judgment on all counts to Liu.