**Robert GRUENER, Plaintiff,**

v.

**AMERITECH CORPORATION,
a Delaware Corporation,
Defendant.**

**No. 98 C 1675.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 5, 2000.

714 F.2d 669, 671–72 (adding that the administration of justice should both be fair and appear fair).

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Robert Gruener was 48 years old in May 1997 when Ameritech fired him from his position as a customer services representative. He filed this age discrimination case in a timely way after receiving his right to sue letter from the EEOC. His attorney withdrew, but he continued to prosecute the case on his own. Ameritech says he was fired because of unsatisfactory performance. Mr. Gruener claims that this is a pretext for discrimination. Ameritech moves for summary judgment in its favor, and I grant the motion. This terminates the case.

### I.

Mr. Gruener was hired in November 1996 at Ameritech's Arlington Heights, Illinois, facility. He was given the normal eight to ten weeks of initial training in a small group. Mr. Gruener's group was 13 persons. The trainees were subsequently "cocooned" or kept apart from more experienced employees so that they could be specially coached. A trainee who completed this phase to Ameritech's satisfaction was then assigned a regular job as a telephone customer service representative.

Mr. Gruener was coached and trained intensively by Jeff Carpenter, the training support manager for his group in the cocoon phase; Laura Edbrooke, the senior manager who hired Mr. Gruener; and Angela Sciortino, at that time a temporary management employee. All agree that Mr. Gruener was the worst performer in his group. He denies this, asserting that he helped others in his group, including one Ruthanne Janis, a person with no previous computer experience, who he says would testify to his offering assistance. He was the only member of his group asked to take a final exam, which he failed, but nothing happened to him as a result.

Robert Gruener, Stow, OH, pro se.

Benjamin Ghess, Daniel A. Kazlauski, Ameritech Corporation, Mary Kay Morrissey, Chicago, IL, for Ameritech Corporation, a Delaware corporation, defendants.

Ms. Sciortino states that she took over the last part of Mr. Gruener's training class and continued to coach him during the cocoon phase. She testifies that Mr. Gruener failed to use the on-line handbook, kept asking the same questions over and over again, was not a "proactive" learner, and put forth the least effort of anyone in his group. He was not a "high performer." He kept forgetting things he had learned, so his progress was "de minimus." Mr. Carpenter says that Mr. Gruener showed limited interest in his job, was disorganized, lacked a sense of urgency or seriousness, and did or could not use the computer tools available to him, and that he exceeded his expected "call times" despite coaching.

Ms. Edbrooke adds that call times were expected to be no more than seven minutes, but Mr. Gruener's were the highest in his group. He had calls that lasted an hour. On April 14, 1997, Ms. Edbrooke says that she observed three calls of his. On the first call, he remained on a dead line for three minutes instead of an expected 20–30 seconds. During the second, he attempted to waive interest costs on a phone he was attempting to sell, in violation of company rules. The third call took over 20 minutes, and Mr. Greer failed to follow company procedures. Ms. Edbrooke warned Mr. Gruener in writing that day that "[a]ny other occurrences of above behavior will lead to further disciplinary action including dismissal." Ms. Edbrooke continued to monitor Mr. Gruener's work, but his ratings fell from an average of 1.6 (of 3, the highest) to 0.94 from April 16 to May 10, 1997. On May 13, she decided to fire him after a discussion with her boss, Chuck Izban.

Mr. Carpenter and Ms. Edbrooke state that they warned Mr. Gruener about sitting back in his chair with his shoes off and his feet on his desk while handling customer calls. Ms. Sciortino observed this behavior and said it "appeared as if he was sitting in his Lazy–Boy at home." Mr. Gruener says Mr. Carpenter never spoke to him about this, and I accept that as true for the purposes of this motion. Mr. Gruener states that he stopped this behavior when Ms. Edbrooke warned him about it, and I accept that as well. Ms. Edbrooke says that she warned him about whistling, singing, and unprofessionally muttering with his back to the computer terminal while handling customer calls. Mr. Gruener admits this happened once, and says that he made sure that the customer did not hear the whistling and singing, and that he stopped when he was warned. I also accept this for purposes of the motion.

## II.

Summary judgment is a device for avoiding having to hold a trial where the outcome is clearly dictated by law even given the facts read in the light most favorable to the plaintiff. *See* Fed. R.Civ.P. 56(c). After all, a trial is supposed to determine whether the plaintiff's factual claims are true, but if it does not matter whether they are true because the plaintiff would lose or win anyway, the case should be decided without a trial, in summary judgment.

To avoid summary judgment for the defendant, the plaintiff must come forward with enough evidence to persuade a rational jury to find for him if it believed that evidence. The evidence has to have some basis, although it need not be technically admissible. A plaintiff cannot avoid summary judgment by referring only to the allegations in his complaint or making bare assertions. He may use affidavits, deposition testimony, or documentary evidence as long as this evidence would be enough for a reasonable verdict in his favor. *See Liu v. T & H Machine, Inc.,* 191 F.3d 790, 795–97 (7th Cir.1999). If the plaintiff can do that, then it is worth going to trial to see whether he can persuade a jury of the credibility of his evidence. If he cannot, there is no point, and I must grant summary judgment. Because Mr. Gruener is not represented by counsel, I give him a

lot of latitude. *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir.1997)(legal filings drafted by pro se plaintiffs are to be construed liberally).

There are, broadly speaking, two ways to argue any discrimination case. One way, not pursued here, is to produce direct evidence of discrimination, some statement suggesting discriminatory motives by a decisionmaker, *e.g.,* explaining the firing of an older employee with the remark, "In a forest you have to cut down the old, big trees so the little trees underneath can grow." *Wichmann v. Southern Illinois University*, 180 F.3d 791, 801 (7th Cir. 1999), *vacated on other grounds by* —— U.S. ——, 120 S.Ct. 929, 145 L.Ed.2d 807. Mr. Gruener presents no evidence of this sort.

■ The other way to prove age discrimination in employment is "indirect" proof by circumstantial evidence. Under this approach, a plaintiff must first make a "prima facie case" that "shifts the burden of proof" or puts the onus on the employer to provide an answer. In order to establish a prima facie case for age discrimination, Mr. Gruener must show that: (1) he is 40 or over, (2) he was qualified for the job, (3) he was fired, and (4) younger employees were treated more favorably. See *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310–11, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Ameritech must then articulate a nondiscriminatory reason for firing Mr. Gruener. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Mr. Gruener must then prove that it is more likely than not that Ameritech's stated reason is merely a pretext for age discrimination. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1404 (7th Cir.1996). If a jury could rationally believe that Ameritech lied about why it fired Mr. Gruener, that would itself be enough to deny summary judgment for Ameritech. *Sheehan Corp. v. Donlen*, 173 F.3d 1039, 1045–46 (7th Cir.1999). A jury might find for

Mr Gruener just because it thought Ameritech lied about why it fired him. *Id.*

## III.

■ In this case, the argument turns on whether Ameritech's proffered nondiscriminatory reason for firing Mr. Gruener, that his performance was not up to snuff, was merely a pretext for age discrimination. Ameritech's reasons why Mr. Gruener's work was unsatisfactory may be summarized as follows: (1) his average handling time was too long; (2) he violated company rules and procedures; (3) he had not mastered or would not use basic skills and resources; (4) he showed a lack of professionalism and discipline in his behavior (shoeless feet up, whistling, etc.); (5) he struck his trainers and supervisors as uninterested, lackluster, and generally marginal.

Mr. Gruener must ordinarily show that each of the nondiscriminatory reasons the employer offers is pretextual. *See Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir.1996). He does not do this, focusing his responses mainly on (1). He makes a stab at (3) and waves at (5), but he concedes (4) and does not dispute (2). His argument must therefore fail, and I must grant summary judgment for Ameritech.

I will, however, discuss the arguments he does make. First, the issue of average review time (point (1)). Mr. Gruener submits a sample review form that he says shows that average handling time, on which he was poor, counted for only 10% of an employee's evaluation, with sales results, where he was better, counting for 50% and "quality," including professionalism and on line tool utilization, counting for 25%. Mr. Gruener never received an evaluation using this form, and he contends that Ameritech violated its own policies in not using this form rather than the "Service Excellence Review Tools" he received.

It might be evidence of pretext on this matter if Mr. Gruener could show that

there was a selective violation of company policies, if younger employees were evaluated using the correct form but older employees, including himself, were not. He shows, however, neither that Ameritech was required by its policies to use particular forms or that there was an age differential in the use of the different forms. Mr. Gruener also does not address the fact that even on his own premises, his "quality" ratings (25% of the total he says should count) would have been poor because of his problems with professionalism and on-line tool utilization.

Still, there remains the argument that it shows discrimination to overemphasize average response time. However, Mr. Gruener does not show that there were any younger employees with similarly poor average response time who were not fired or otherwise disciplined. Mr. Gruener asserts that he was told by someone named Angie and by unnamed union people that Ameritech fired people for poor sales or poor attendance and not for poor average response times. If he could show that he had been fired only because of poor average response time and no one younger ever had been fired for that reason, he might have an argument, but there were other reasons he was fired, and he does not show that he was treated worse than younger people in this regard.[1]

Second, Mr. Gruener disputes Ameritech's claims that he was perceived as lacking in skills (point (3)), enthusiasm, and compared poorly to others in his group (point (5)). His main argument here is that he was able to help others in his group, particularly a woman who had no prior computer skills. But a rational jury could believe this and still believe that Mr. Gruener was relatively unmotivated

and comparatively unskilled, since he offers no evidence to the contrary. After all, even the worst trainee in a group may know things that others in the group do not, and may be able to help them. Mr. Gruener's bare assertions that he was enthusiastic and motivated do not help him. Bare assertions carry no weight.

Third, Mr. Gruener admits that he behaved unprofessionally, keeping his shoeless feet on his desk as he leaned back in his chair until he was asked to stop, and at least once whistled and sang with his back to the screen as he talked to a customer. Those might seen awfully slender grounds to fire someone, although they would be nondiscriminatory. Mr. Gruener fails to argue expressly that these grounds are pretextual, but he is pro se, so I will infer from his claims that he only did these things once and stopped when warned that he means to argue that if these were the only grounds on which he was fired, they are so slender that they must be pretexts for discrimination.

That would not be not implausible, since Ameritech does not even argue that these by themselves would be firing offenses, but they are not the only reason Ameritech offers. Among the other reasons, point (2), violation of company rules, is uncontested, and may well be a firing offense. And combined with the other proffered reasons and Mr. Gruener's inadequate responses, a rational jury would have to conclude, even if it accepted everything Mr. Gruener said, that he has not shown that it was more likely than not that he was fired because of his age rather than his performance.

Mr. Gruener also makes a number of arguments that are more quickly disposed of. (1) He says that he was not properly

---

1. Mr. Gruener asserts that all but one of the trainees still in his cocoon when he was terminated were over 40. In May 1997, five months after he had been hired, 80% of the younger employees had been placed with a supervisor while 80% of the 40+ employees were still in the cocoon. He thinks this shows discrimination but he fails to show that being kept in the cocoon is "adverse employment action." Just possibly the evidence is consistent with Ameritech fast-tracking the younger employees, but a rational jury would have to know more to conclude this, and the connection to Mr. Gruener's case would have be more carefully articulated.

trained and that the managers in his cocoon never had time for the trainees, but he does not say anything that would suggest that older workers were specially neglected. (2) Mr. Gruener says that he was the only member of his group asked to take a "final exam," but he suffered no employment consequences even when he failed the exam, and other older people in the group were not required to take the exam. (3) Mr. Gruener argues that the advertisement for his position was discriminatory because it asked for candidates who could "think quickly" and work in a "fast paced environment," which would not "typically attract the over–40 population." That is as may be: it attracted him and other older workers, however, and he got the job. (4) Mr. Gruener complains that the grievances he filed with the company in May 1997 connected with performance issues were never heard. That might be unjust, but he has not shown that he has any legal right to due process against the company. The Constitution is effective only against the government, and if Mr. Gruener has a claim against the company for breach of contract or on some other basis, he is now precluded from making it, since he could have made it here and did not. (4) Mr. Gruener complains that Mr. Carpenter never gave him an unsatisfactory evaluation, contrary to what Ms. Edbrooke stated in her memo to him about the April evaluation. However, even granting that the memo was mistaken, she does not rely on that claim, or even assert it, in her own affidavit explaining her decision. (5) Finally, Mr. Gruener argues that he was in demand for overtime, which shows that he was doing his job properly. However, here it is equally consistent with Ameritech wanting to exploit all its employees to the maximum, whatever their abilities. I do not say that this is true either, just that in the circumstances the overtime demand is not strong evidence of satisfactory performance.

## IV.

In sum, taking the facts in the light most favorable to Mr. Gruener, he has not shown that, more likely than not, Ameritech's proffered reasons were pretexts. Even if he were able to persuade a jury of all the pertinent facts he alleges, he would still lose, and so there would be no point in a trial. Mr. Gruener prosecuted his case valiantly and for a pro se litigant, well. Losing this case does not represent a judgment or finding that Ameritech was right that his performance was unsatisfactory, just that he failed to show that they were wrong by a preponderance of the evidence, which was his burden in addressing this motion. The outcome of this case is consistent with Mr. Gruener having been done an injustice, although not one actionable under the age discrimination law. Since, however, he has failed to rebut Ameritech's nondiscriminatory reason for firing him, I must GRANT Ameritech's motion for summary judgment. I DENY as moot its motions to strike.