Albert BROWN, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 99 C 1728.

United States District Court,
N.D. Illinois,
Eastern Division.

May 9, 2000.

Benjamin Earl Starks, Carl B. Boyd, Starks & Boyd, P.C., Chicago, IL, for Albert Brown, plaintiff.

Richard Andrew Hahn, Best, Mangan & Langhenry, Chicago, IL, W Perry Brandt, Stephen M Bledsoe, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, Kansas City, MO, for Ford Motor Corporation, defendant.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Albert Brown has filed a four-count complaint against defendant Ford Motor Company, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Specifically, plaintiff alleges that: (1) defendant terminated him on the basis of age; (2) defendant discriminated against him on the basis of race by terminating him, denying him overtime, requiring him to pay twice as much money in union dues as white employees, and paying him less than white employees; (3) defendant terminated him in retaliation for complaining about race discrimination; and (4) defendant refused to hire him to the position of Head of Security on the basis of race and age, and hired a younger, less qualified white person instead. Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion is granted.

As an initial matter, plaintiff failed to file a Local Rule ("L.R.") 56.1(b)(3)(A) response to defendant's L.R. 56.1(a) statement of facts. The local rule reads: "Each party opposing a Rule 56 motion shall serve and file, [inter alia,] ... a concise response to the movant's statement that shall contain: (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.... All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3). In short, the Local Rule "requires both denial and support for that denial." *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992).

"An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." *McGuire v. United Parcel Service*, 152 F.3d 673, 675 (7th Cir.1998). Because plaintiff did not even attempt to adhere to the Local Rule, the facts set forth in defendant's statement of facts are deemed admitted. *See, e.g., Federal Trade Commission v. Febre*, 128 F.3d 530, 536 (7th Cir.1997) (holding that district courts may deem a defendant's facts admitted when the plaintiff does not properly admit or deny those facts in a statement pursuant to L.R. 56.1(b)(3), then numbered L.R. 12(N)). Moreover, although plaintiff filed an additional statement of facts pursuant to L.R. 56.1(b)(3)(B), plaintiff did not provide record support for certain of these statements. The court disregards these unsupported statements. *See, e.g., Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997) (refusing to consider the plaintiff's additional facts where not supported by specific references to the record).

### FACTS[1]

Plaintiff, a 56–year–old black male, was hired by defendant as a Flexible Service or Auxiliary Guard ("Flex Guard"). Under an agreement with the plant union, the Plant Protection Association ("PPAN"), defendant was authorized to hire Flex Guards to temporarily supplement the regular workforce. Plaintiff began working for defendant at its Chicago Assembly Plant ("the plant") on April 24, 1998. On June 4, 1998, consistent with defendant's policy, plaintiff completed an Application

---

1. The facts will be discussed in greater detail in the body of the opinion.

for Employment and paid union dues of $500 to PPAN.

In August 1998, plaintiff informed defendant that he needed to take time off to care for his sister in Memphis, Tennessee. Under defendant's policy for Flex Guards, plaintiff was not required to submit a formal vacation request or fill out any paperwork concerning his forthcoming absence. When plaintiff returned from Tennessee in September 1998, he called George Hartigan ("Hartigan"), the acting Head of Security, and informed Hartigan that he was available to work. Hartigan told plaintiff that he could not return to work because he was a temporary employee and no Flex work was available at the time. In October 1998, Hartigan contacted plaintiff and asked if he were available to fill in for a forty hour assignment. Plaintiff declined the request. In February 1999, defendant's new Head of Security contacted plaintiff and again asked if he would be willing to fill in for several shifts. Plaintiff again declined the request. Plaintiff now contends that Hartigan's exchange with him in September 1998 constituted a termination.

In September 1998, the Head of Security at the plant was terminated. Soon thereafter, defendant launched a campaign to find a replacement. The campaign was headed by James Brown ("Brown"), defendant's Head of Human Resources at the plant, and was overseen by Randy Griffin, Plant Manager. Jay Stanwich ("Stanwich"), defendant's Supervisor of Salaried Personnel, who is white, aided Brown and Griffin, both of whom are black, in their search for a replacement. Plaintiff applied for the position, but on October 14, 1998, defendant selected Steve Knaak ("Knaak"), a white male, for the job. Plaintiff alleges that he was not hired as Head of Security because he is black.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *See. Fisher v. Transco Services– Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added. rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## DISCUSSION

To state a claim for intentional discrimination under Title VII and the ADEA, a plaintiff has two options: he may satisfy his burden of proof by offering direct evidence of discriminatory intent; or he may demonstrate such intent indirectly by following the *McDonnell Douglas* burden-

shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because plaintiff does not present any direct evidence of discrimination, the court assumes he is relying on the *McDonnell Douglas* formula. Under this framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff succeeds in establishing a prima facie case, he creates a rebuttable presumption of discrimination and the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment decision. If the employer is successful, the presumption of discrimination dissolves, and the burden shifts back to the employee to prove that the employer's proffered reasons are a pretext for discrimination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. *See Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir.1994).

## I. Plaintiff's Alleged Termination (Counts I & II)

Plaintiff claims that he was terminated as a result of age discrimination (Count I) and race discrimination (Count II). Under Title VII, it is an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–(2)(a). Similarly, the ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individ-

ual ... because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of race discrimination under Title VII or age discrimination under the ADEA, a plaintiff must produce evidence that: "(1) he was a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742–43 (7th Cir. 1999) (Title VII); *see also Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1153–54 (7th Cir.1999) (ADEA). To establish the fourth element of his prima facie case of age discrimination, plaintiff must specifically prove that defendant sought to replace him with a younger employee. *See, e.g., Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir.1999) ("In situations involving the simple termination of a single employee, normally the employee must establish that the employer sought a younger replacement for him.").

■ Plaintiff alleges that defendant terminated him because he was black and because he was over forty, and that defendant subsequently hired a younger, white individual. Defendant argues in its motion for summary judgment that there is no evidence that plaintiff was terminated. Rather, Hartigan told plaintiff not to return to work because plaintiff was a temporary employee and no work was available at the time. Plaintiff responds that he was a full-time employee, but he offers no evidence to support this contention. Even assuming that plaintiff suffered an adverse employment action short of termination when Hartigan informed him not to return to work,[2] plaintiff presents no evi-

---

2. Had defendant directed the court to evidence in support of its argument that defendant had no binding commitment to provide Flex Guards with work, the court might have been able to conclude as a matter of law that Hartigan did not subject plaintiff to an adverse employment action when he told plaintiff not to return to work. Because defendant

has not provided sufficient support for its argument, and because the court must draw all inferences in the light most favorable to the plaintiff, the court concludes that plaintiff has created a disputed issue about whether he was subjected to an adverse employment action in September 1998.

dence that similarly situated younger, non-black employees were treated differently. Plaintiff does not present any evidence to support the allegation in his complaint that defendant hired a younger, white employee after terminating plaintiff, and does not even attempt to argue that he was replaced by such an employee (if he was replaced at all). Plaintiff therefore is unable to establish a prima facie case of race or age discrimination with respect to his termination.

Even if plaintiff could establish a prima facie case of race or age discrimination, defendant has presented a non-discriminatory reason for Hartigan's informing plaintiff not to return to work. According to defendant, as a Flex Guard, plaintiff could work only when Flex work was available, and none was available at the time plaintiff called. Plaintiff does not dispute this fact, and therefore does not dispute defendant's race- and age-neutral reason for not providing him with work in September 1998. Moreover, plaintiff does not present any evidence that he was not given work on that date as a pretext for race or age discrimination. Plaintiff therefore cannot survive summary judgment on his claim that he was terminated because he was black and over forty years old.

## II. Race Discrimination (Count II)

In Count II, plaintiff alleges that defendant not only terminated him because he was black, but also discriminated against him on the basis of race by denying him overtime, requiring him to pay his union dues twice, and paying him lower wages than his non-black coworkers. Again, to establish a prima facie case of race discrimination, plaintiff must demonstrate that defendant treated similarly situated non-black employees differently.

■ Plaintiff alleges that he was denied the opportunity to work overtime and that he was not scheduled to perform as much overtime work as employees outside the protected class. Plaintiff first alleges that defendant allowed a white employee to work as a security guard and thus denied

other security guards overtime. Defendant argues that if defendant denied every other employee the same opportunity it denied plaintiff, plaintiff cannot contend that this action constituted race discrimination. Plaintiff does not respond to defendant's argument or otherwise present evidence in support of his allegation. His claim that he was denied the opportunity to work overtime on the basis of race therefore fails.

In addition, plaintiff alleges that defendant did not schedule him for the same amount of overtime work as white employees. Defendant argues that because plaintiff was a Flex Guard, he was not scheduled for overtime work in the same way as full-time guards. Knaak attests that Flex Guards do not receive overtime unless all other available employees have refused overtime. Defendant contends that plaintiff has not proven that he was given fewer overtime opportunities than non-black Flex Guards.

Plaintiff barely responds to defendant's evidence. He merely states that white guards received more overtime and were scheduled for overtime, while he received overtime only as a last resort. Plaintiff offers no support for this contention in the form of time records or the testimony of other employees. Most damningly, plaintiff does not dispute defendant's evidence that any difference in plaintiff's overtime opportunities stemmed not from his race but from the nature of his position, and does not present any evidence that he was treated differently than otherwise similarly situated white Flex Guards. And finally, defendant presents evidence, in the form of Knaak's supplemental affidavit, that plaintiff worked more overtime hours than any other Flex Guard during the summer of 1998. For the foregoing reasons, plaintiff cannot establish a prima facie case that defendant discriminated against him on the basis of race by not scheduling him to work as many overtime hours as other employees.

Plaintiff also alleges that defendant discriminated against him by requiring him to pay union dues twice, while similarly situated white employees were only required to make a single dues payment. Defendant argues in its motion that defendant and PPAN are two separate entities, and that plaintiff cannot demonstrate that defendant may be held liable for actions taken by the union. Plaintiff addresses this argument by arguing that he was instructed to deliver both of his payments to Gary Miller, his supervisor, rather than to the union. Plaintiff provides no record support for this contention.

■ Defendant argues that even if plaintiff could prove that defendant is liable for actions taken by the union, plaintiff cannot prove that his account was debited twice. According to defendant, plaintiff was required to make a second payment to the union because his first check had bounced. Even after defendant alerted plaintiff to the evidence that he must provide to prove his claim, plaintiff has not presented any evidence to suggest that his first check cleared. Along with its reply, defendant presents the affidavit of Marcella Martinez, treasurer for PPAN, who attests that plaintiff's first check was returned for insufficient funds, and that the total amount PPAN received from plaintiff was $500. Plaintiff therefore does not create a question of fact that he paid more than the usual $500 to the union.

Moreover, even if plaintiff had proven that he paid more than other union members, plaintiff provides no evidence to demonstrate that his account was debited twice because of his race, rather than because of an administrative error. Plaintiff contends that defendant has not presented evidence that a white employee was subject to the same alleged administrative error. Plaintiff fatally misinterprets where the burden of proof lies. It is plaintiff's burden to prove that he was discriminated against by proving that the second request for dues was not an administrative error but was instead race-based. Plaintiff has failed to carry this burden. Consequently, plaintiff

has neither demonstrated a prima facie case on this issue nor presented evidence of pretext.

Finally, plaintiff alleges in his complaint that he was not paid wages equal to those of similarly situated non-black coworkers. Plaintiff does not present any evidence in support of this claim. Accordingly, the court grants defendant's motion for summary judgment on Count II, plaintiff's race discrimination claim.

### III. Retaliation (Count III)

Plaintiff contends that he was terminated in retaliation for complaining about race discrimination within the company. Plaintiff alleges that he was terminated because he complained that four black employees had been fired after they attended an unauthorized party in the parking lot.

■ "Title VII also makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII].'" *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994) (quoting 42 U.S.C. § 2000e–3(a)). To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Id.*

■ Defendant does not contest that plaintiff's complaints about the other employees' terminations constituted protected expression. Defendant argues, however, that plaintiff cannot demonstrate that he suffered an adverse employment action, because plaintiff was never terminated. Even assuming that Hartigan subjected plaintiff to an adverse employment action by not assigning him work in September 1998, plaintiff cannot demonstrate a causal link between his complaint and his termination. Hartigan attests that he was unaware that plaintiff had complained about

the way management handled the unauthorized party. Plaintiff attempts to create a triable question about whether Hartigan knew of his complaint. Plaintiff testifies that he aired his complaint while speaking with the FBI and with an independent group dispatched or retained by defendant to investigate the party, and argues that it is unlikely that this group was dispatched to speak to him without first speaking to his supervisor, Hartigan. Plaintiff does not even attempt to argue, let alone prove through evidence, that after speaking with plaintiff, the group relayed plaintiff's comments to Hartigan.

Because plaintiff cannot counter Hartigan's testimony that he was unaware of plaintiff's complaints, plaintiff cannot demonstrate a causal link between his expression and Hartigan's action. The court therefore grants defendant's motion for summary judgment on Count III, plaintiff's retaliation claim.

## IV. Refusal to Hire (Count IV)

Plaintiff alleges that defendant failed to hire plaintiff to the position of Head of Security because he is black, and that defendant instead hired Knaak, a less qualified white individual. Defendant assumes for the purposes of the instant motion that plaintiff can demonstrate a prima facie case, that is, that plaintiff applied for the position, was qualified, was not hired, and that a white person (Knaak) was hired instead. Defendant argues, however, that it had a legitimate, race-neutral reason for not hiring plaintiff. According to defendant, plaintiff was less qualified than the other applicants, including Knaak.

Defendant asserts that when plaintiff applied for the job, it was forced to make its decision based on plaintiff's former resume that he had submitted for the Flex Guard position in June 1998, which did not demonstrate that plaintiff had any prior security, safety, or medical experience. According to defendant, plaintiff did not supply defendant with an updated resume

that included his security experience at various public schools. Brown and Stanwich, two of the three people responsible for hiring a new Head of Security, attest that defendant did not have a copy of plaintiff's updated resume at the time the hiring decision was made. Plaintiff does not dispute this fact. Plaintiff contends that he sent defendant his updated resume, but does not provide evidence to demonstrate when he did so. Plaintiff merely submits the affidavit of Monique Coleman ("Coleman"), who attests that she personally delivered plaintiff's resume to Stanwich on or about September 24, 1998.[3] Yet Coleman does not attest whether the resume she delivered was the original or the updated resume, and although her affidavit states that the resume she delivered is attached, plaintiff fails to attach the relevant resume to Coleman's affidavit. Coleman's testimony therefore does not controvert defendant's evidence that it did not receive plaintiff's updated resume until after Knaak had been hired for the position.

■ Plaintiff also attempts to dispute defendant's argument that Knaak was more qualified by contending that defendant has admitted that Knaak lacked extensive security experience at the time he applied for the job. Yet because plaintiff does not contest any of defendant's facts, plaintiff admits that he was eliminated from consideration for the position because he did not possess sufficient experience and knowledge for the job, and admits that Knaak was hired because he was the most qualified candidate of those considered for the position. Plaintiff thus surrenders any argument that defendant's failure to hire him was a pretext for race discrimination. Accordingly, the court grants defendant's motion for summary judgment on Count IV, plaintiff's refusal to hire claim.

## CONCLUSION

Plaintiff appears to labor under a fundamental misconception about the nature of

---

**3.** Plaintiff does not even attempt to explain who Coleman is, what position she holds with defendant, or what role she played in the instant matter.

summary judgment motions and the proper way to contest such motions. Mere speculation and conjecture are not enough to stave off the entry of summary judgment. *See, e.g., Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir.1999). Rather, the non-moving party must come forward with evidence to contest the defendant's evidence and to prove his claim. The court reiterates that to create a genuine issue of material fact, the non-moving party must present sufficient favorable evidence for a reasonable jury to return a verdict in its favor. *See id.* Plaintiff has not carried his burden with respect to any of his discrimination claims. For the foregoing reasons, the court enters summary judgment for defendant.