Gerald H. BIOLCHINI, Plaintiff–
Appellant,

v.

GENERAL ELECTRIC COMPANY,
Defendant–Appellee.

No. 98–2017.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1998.

Decided Feb. 5, 1999.

Robert M. Hodge (argued), Chicago, IL, for Plaintiff–Appellant.

David J. Rowland, Hallie Goldman Hohner (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee.

Before FLAUM, KANNE and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Gerald Biolchini appeals from summary judgment in favor of General Electric Company ("GE") on his age discrimination claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. We now affirm.

## I. BACKGROUND

Gerald Biolchini is fifty-seven years old. He worked as an electrician in GE's Bloomington, Illinois facility from 1962 until 1989 when he was laid off and informed that he had one year in which to find another job within GE. Just prior to his termination, Biolchini was hired to work in GE's Parts Service Center ("PSC") by William Doyle, the PSC's manager. The PSC is a centralized facility for GE's engineering services department that stocks and ships GE parts. It also operates a small electronic repair facility. Biolchini knew Doyle and considered him a friend. Doyle was older than Biolchini.

In 1991, Doyle assigned Biolchini lead responsibilities with regard to the repair area and facility maintenance. From "the day he walked into the place," Biolchini had the impression that some PSC employees disapproved of the way Doyle managed the facility. In addition to their "continual disrespect" for Doyle, Biolchini felt animosity directed towards him "because [the employees] knew he was brought in to try to help straighten out the work and get things going on the right track."

During 1992, Human Resources Manager, Allen Renz, age 54, received numerous complaints about Doyle's management from PSC employees. Sometime in or before 1992, Renz scheduled a meeting with Doyle and his subordinates to allow the PSC employees to air their grievances in front of Doyle. Renz felt this meeting was unsuccessful because the employees "would not open up with their problems" in front of Doyle. In late January 1993, Renz and Doyle's supervisor, Joe Reuter, age 54, conducted two "skip-level" meetings with the PSC employees without Doyle or Biolchini present. At these meetings, the PSC employees complained not only about Doyle's management, but also about Biolchini. In particular, they complained about Biolchini's technical inadequacy for his job and their inability to get information from him.

Early in 1993, Doyle received a complaint from Linda Martin, a female employee at the PSC, alleging that Biolchini had sexually harassed her. Doyle contacted Renz who then investigated Martin's complaint. Renz interviewed Martin and various other PSC employees and twice met with Biolchini. During this investigation, Renz discovered that Biolchini had been aware of a different incident in which one of Biolchini's subordinates had groped a female employee. Instead of reporting that incident to the human resources department as he was supposed to do, Biolchini "[took] care of that issue" by speaking to the employee.

Renz and Reuter investigated the reported problems with Doyle's management by interviewing PSC employees and customers. Because Renz was contemporaneously inves-

tigating Linda Martin's sexual harassment allegations against Biolchini, he also investigated the various statements raised at the meetings concerning Biolchini's performance and technical aptitude.

On or about February 5, 1993, Renz and Reuter met with Doyle to discuss his management of the PSC and Biolchini's performance. During this meeting, Doyle indicated that he agreed with Renz's assessment that Biolchini appeared unqualified to be a leader in the repair facility. Doyle also concurred that Biolchini seemed to have engaged in inappropriate conduct with respect to Martin.

Between February 5 and February 12, 1993, Reuter, Doyle and Renz agreed that Biolchini would be suspended for two weeks and that GE would remove him from the lead responsibilities in the repair facility. On February 12, Renz, Reuter and Doyle met with Biolchini and presented him with a disciplinary letter which discussed both the outcome of the sexual harassment investigation and Biolchini's shortcomings as a leader of the repair facility. Biolchini objected to the investigatory findings. Doyle and Renz agreed to make one change to the letter because it appeared that Biolchini was not responsible for one of the issues identified in it. Doyle was supposed to reissue the letter, but never did so prior to his own reassignment out of the PSC the next month.

Following Doyle's reassignment, Reuter became the acting manager of the PSC and reissued the disciplinary letter under his own signature. Reuter's letter was almost identical to Doyle's, except that the new letter reduced Biolchini's suspension from two weeks to one week. The letter stated that his pay would remain at its current level. Biolchini appealed the disciplinary letter to Thomas Rathburn, Manager, Human Resources, who affirmed the decision.

Some of Biolchini's lost lead responsibilities were assigned to Nelda Greco, age 47. His other responsibilities were distributed among a variety of other PSC employees. After Biolchini returned to a technician position following his suspension, John C. Wade, another PSC employee approximately fifteen years junior in age to Biolchini, was asked to assist in training Biolchini to improve his technical skills to a satisfactory level. In June 1993, it became apparent that Greco could not handle the lead responsibilities, so Wade took over as Lead Technical Specialist and assumed a portion of Biolchini's former lead responsibilities. Biolchini retained the title of Technical Specialist and kept the same salary.

Biolchini filed charges with the EEOC claiming age discrimination and retaliation in violation of ADEA. The EEOC issued a right to sue letter on both claims and Biolchini filed suit in federal court. On March 25, 1998, Judge Conlon granted summary judgment in favor of GE on both claims. Biolchini appeals only the age discrimination claim.

## II. ANALYSIS

Biolchini makes two arguments on appeal. First, he challenges the district court's decision that he failed to establish a prima facie claim of age discrimination. Second, he argues that the district court erred in finding that GE's articulated reasons for demoting him were not pretextual.

### A. Standard of review.

This court reviews a grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994).

### B. Prima facie case of age discrimination.

To establish a prima facie case of age discrimination, Biolchini had the burden of proving that: (1) he was in the protected age group; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ It is undisputed that Biolchini was in the protected age group and that he suffered an adverse employment action in the form of a one week suspension and the removal of his lead job responsibilities. However, the district court found that Biolchini was unable to meet his burden of proving a prima facie case because he failed to establish the second prong of the test, the requirement that he was meeting his employer's legitimate job expectations. We agree with this assessment.

First, the record clearly shows that the human resources department had received complaints from several PSC employees about Biolchini's technical inadequacy and "punitive" management style. Biolchini argues that these complaints were based on the other employees' biases against him. However, Biolchini has not presented any evidence indicating that even if the other employees were biased against him, this bias carried over into GE's appraisal of the issues contained in the disciplinary letter.

Second, GE's internal investigation determined that Biolchini had violated the company's sexual harassment policy. Biolchini challenges the quality of the investigation and its findings, arguing that it was flawed because it failed to uncover the other employees' biases against him. However, this court has noted that even where a plaintiff in a discrimination case alleges that "the company's investigation was imprudent, ill-informed and inaccurate," summary judgment is appropriate unless the employee "could point to facts suggesting that the company investigated [him] differently because [he] was an older employee." *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 677 (7th Cir.1997). Biolchini has not provided such evidence.

■ Biolchini has also failed to establish the fourth prong of the prima facie test, which compares the company's treatment of similarly situated younger employees to its treatment of him. Biolchini argues that he has provided evidence that Wade, a younger employer, was treated more favorably by GE, apparently because he took over some of the lead responsibilities after Biolchini was demoted. According to Biolchini, he should be compared to Wade because: (1) Biolchini replaced Wade as lead in 1991 and (2) Wade was not as qualified to perform the functions of the job unrelated to the repair facility.

However, GE's argument that these facts fail to prove that Biolchini and Wade were similarly situated is persuasive. First, qualifications change, so the fact that Biolchini replaced Wade in 1991, for whatever reason, does not mean that the two men were similarly situated in 1993. Second, Biolchini has failed to cite any record evidence to support his conclusory proposition regarding Wade's qualifications to perform functions outside of the repair area. Third, and perhaps most compelling, the evidence shows that Wade, unlike Biolchini, holds an associates degree in electronics, worked in the PSC three years longer than Biolchini and had stronger technical expertise than Biolchini. Finally, there is no evidence that Wade, unlike Biolchini, had performance problems or that he had violated GE's sexual harassment policy.

### C. Pretext.

GE argues that even if Biolchini has presented a prima facie case of discrimination, the decision of the district court should be affirmed because GE has articulated legitimate, non-discriminatory reasons for removing Biolchini's lead responsibilities. Biolchini claims that the reasons given by GE for firing him were mere pretext for age discrimination.

■ As Biolchini has not provided any direct evidence of pretext, the burden shifts to him to show that: (1) the proffered reasons for demoting him had no basis in fact; (2) the proffered reasons did not actually motivate his demotion; or (3) the reasons were insufficient to motivate his demotion. *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir.1997). This argument basically parallels the discussion of the second prong of the prima facie test above because, "[h]ere, as in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not per-

forming in an acceptable manner." *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996).

The district court found that Biolchini had failed to show that GE's reasons for demoting him were pretexts for age discrimination. We agree with that determination. GE's reasons for demoting Biolchini were the repeated complaints about his performance by other employees and the finding that he had violated GE's policy on sexual harassment. As discussed above, Biolchini has not presented any competent evidence disputing those alleged reasons for his demotion. He argues instead that the decision-makers, Renz and Reuter, were unwittingly influenced by the younger PSC employees who wanted to force out Doyle and Biolchini. However, even if this were true, Biolchini has still failed to show that the reasons given by GE for demoting him were not based in fact. Moreover, he has not shown that the decision-makers were motivated by reasons other than Biolchini's poor performance and violation of the sexual harassment policy, nor has Biolchini proven that these reasons were insufficient to motivate his demotion.

### III. CONCLUSION

For the reasons stated herein, the judgment of the district court is AFFIRMED.