**Arthur WILSON, Plaintiff–Appellant,**

v.

**LEAR CORP., formerly known as UT Automotive, Inc., Defendant–Appellee.**

**No. 00–3334.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 30, 2001.

Decided March 16, 2001.

Before FLAUM, Chief Judge, RIPPLE and ROVNER, Circuit Judges.

## ORDER

Arthur Wilson, a human resources manager for UT Automotive (UT),[1] filed suit against UT under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, after his employment ended when he was 52. In granting summary judgment for UT, the district court held that Mr. Wilson did not establish a prima facie case and failed to demonstrate pretext. On appeal, Mr. Wilson challenges these holdings. We affirm.

Mr. Wilson began his employment with UT in 1989, when UT acquired Mr. Wilson's employer, Sheller–Globe. At the time, UT operated 65 plants across the United States, though by 1997 that number was reduced to 27. Each plant operated under one of five different business units: Europe, Wiring, Interiors, Input Controls, and Electronics.

Most of the plants had an on-site human resources manager. While UT apparently has not set any firmly established qualifications for being a human resources manager, several managers were selected for membership in the Leadership Group, a program designed by UT to attract, retain, and develop individuals believed to have a high potential and capacity for continued promotion. Managers selected for the Leadership Group were "early career peo-

---

1. Lear Corporation purchased UT on May 4, 1999. Thus Lear Corporation is the proper appellee in this suit. *See Howard v. Lear Corp. EEDS and Interiors*, 234 F.3d 1002, n. 1 (7th Cir.2000). However, since the parties have continued to refer to the appellee as UT, for the sake of clarity I have followed their lead.

ple" who typically had an advanced degree from a highly regarded university, had practical work experience related to that degree, and had demonstrated high potential capability. Leadership Group members were given some advantages over those not in the group, including being able to transfer between business units (a practice generally prohibited by UT), and were expected to eventually become executives within UT.

When UT purchased Sheller–Globe, Mr. Wilson remained as human resources manager in the Herrin, Illinois facility. In May 1994, after Mr. Wilson finished performing various tasks related to the closing of the Herrin facility, UT transferred him to its North Manchester, Indiana plant, even though that plant was in a different business unit and Mr. Wilson was not a Leadership Group member.

In August 1996 UT announced that it was closing the North Manchester facility. Upon being notified of the pending shut down, Mr. Wilson attempted several times to transfer to a different human resources manager position with UT. Upon learning of managerial openings, Mr. Wilson sent resumes to the managers of UT's plants in Tampa, Florida and Zanesville, Ohio. Also, Mr. Wilson spoke with John Lanier, the director of human resources for the Interiors business unit, about openings in St. Louis, Missouri and Bay Valley, Michigan. UT asserts that these were the only attempts Mr. Wilson made to transfer to another position, though Mr. Wilson states that in October 1996 he sent his resume to UT's parent company, United Technology Corporation, and asked Thom Polera, director of human resources for the Wirings business unit, to make sure his resume circulated so that he would be considered for any human resources manager positions that became vacant.

The North Manchester plant closed in March 1997. Mr. Wilson was allowed to stay on to perform plant closing activities, which he completed on September 7, 1997. Mr. Wilson had not obtained a transfer by that date and therefore UT terminated his employment. Between the August 1996 announcement that the North Manchester plant was closing and Mr. Wilson's termination in September 1997, UT filled 11 human resources manager positions. Those positions were filled by the following people: Ann Schmitz, 28; Gregg Black, 36; Julie Kurchak, 27; Von Williamson, 44; Timoty Rick, 30; Nancy Murray, 59; Charles Mockbee, 49; Frank Pottorf, 52; Richard Giles, 49; Cathy Tessin, 35; and Marv Orem, 43.

Mr. Wilson filed a charge of discrimination with the EEOC in September 1997, asserting that UT had discriminated against him between August 1996 and September 1997 on the basis of age by not ensuring that he was transferred to another human resources manager position, even though a number of younger people had been hired to fill such positions. UT responded to the charge in a letter to the EEOC by stating that the vacancies were filled as a result of "prior commitments" or were "not compatible with [Mr. Wilson's] skill set." The EEOC dismissed Mr. Wilson's charge in March 1999.

Mr. Wilson filed suit in June 1999, asserting that UT refused to reassign him because of his age in violation of the ADEA. Mr. Wilson acknowledged that his termination itself was not discriminatory. Instead, Mr. Wilson infers discrimination from UT's failure to transfer him to a human resources manager position at another plant after the August 1996 announcement that the North Manchester plant was closing.

The district court granted summary judgment to UT. The court held that Mr.

Wilson could not establish a prima facie case because he could not show that similarly situated yet substantially younger employees were treated more favorably than him. Specifically, the district court noted that six of the individuals hired as human resources managers during the relevant time period (Williamson, Murray, Mockbee, Pottorf, Giles, and Orem) were not substantially younger than Mr. Wilson. These hires were therefore irrelevant to Mr. Wilson's ADEA claim, a point which Mr. Wilson concedes. *See Scott v. Parkview Memorial Hosp.*, 175 F.3d 523, 525 (7th Cir.1999) (holding that employee must be younger by "ten years or more" to be considered substantially younger). Regarding the other five employees (Schmitz, Black, Kurchak, Rick, and Tessin), the district court agreed with UT that those employees were not similarly situated to Mr. Wilson because, unlike Mr. Wilson, they all had advanced degrees and were members of the Leadership Group.

The district court also held that UT had legitimate, nondiscriminatory reasons for hiring the five younger employees rather than Mr. Wilson. Specifically, the court acknowledged that UT had no legal duty to ensure that Mr. Wilson was transferred, and that the five employees' advanced degrees and Leadership Group membership constituted legitimate, nondiscriminatory reasons for their hiring. Finally, the court noted that Mr. Wilson had not offered any evidence to rebut UT's proffered reasons for not transferring him.

On appeal, Mr. Wilson asserts that he established a prima facie case and pretext in regards to UT's failure to transfer him to another human resources manager position. Specifically, Mr. Wilson dismisses as inappropriate and false UT's claim that it selected the five people who were substantially younger than him because they were

members of the Leadership Group and had advanced degrees.

The district court was correct in holding that Mr. Wilson did not set forth a prima facie case of discrimination with regards to UT's failure to transfer him. The parties do not dispute that the first three elements of the prima facie case are met because Mr. Wilson was over 40, was meeting UT's legitimate expectations, and suffered an adverse employment action. *See Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1153 (7th Cir.1999). Mr. Wilson, however, cannot establish the fourth prong of the prima facie case that similarly situated but substantially younger individuals were treated more favorably. Mr. Wilson's case here fails because the five substantially younger individuals chosen for the human resources manager positions were better qualified, as evidenced by their advanced degrees and membership in the Leadership Group. *See, e.g., Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir.2000) ("plaintiffs were required to show at a minimum that the retained or transferred younger employees possessed analogous attributes, experiences, education, and qualifications ..."); *Biolchini*, 167 F.3d at 1154 (noting that plaintiff electrician was not similarly situated to another employee in part because the other employee had an associates degree in electronics); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) (noting that plaintiff was not similarly situated to other employee because plaintiff lacked qualifications that the other employee possessed).

If Mr. Wilson had established a prima facie case, UT would then have had the burden of producing a legitimate, nondiscriminatory reason for failing to transfer Mr. Wilson. *See Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir.1999). UT clearly met this burden: it explained that

it did not have a legal duty to ensure that Mr. Wilson received another position with the company, and it demonstrated that it had selected all of the human resources managers based on their qualifications such as advanced degrees and potential for future leadership with UT.

The burden-shifting test would next require the court to consider whether Mr. Wilson demonstrated that UT's proffered explanation is merely a pretext for age discrimination. *See Biolchini*, 167 F.3d at 1154. In an attempt to show pretext (and to challenge the finding that he is not similarly situated to the other hires), Mr. Wilson argues that consideration of membership in the Leadership Group is improper because it amounts to age discrimination. Mr. Wilson notes that UT's human resources directors stated at their depositions that one criterion for selection to the Leadership Group is that the employee be an "early career person." Mr. Wilson asserts that the phrase "early career person" is simply a euphemism for being young.

Mr. Wilson's argument fails. As UT explains, the Leadership Group was designed to identify people who had the greatest potential for moving up in the company and serving the company over the long haul. These are legitimate considerations for a company making employment decisions. *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389–90 (7th Cir.2000) (holding that company did not violate ADEA by retaining employees with the "longest-term potential"). "Early career people" were selected based on their tenure with the company; these selections presupposed that someone new to the company was more likely to advance than someone who had been in the same position at UT for a number of years. An "early career person" designation does not necessarily refer to age. *See, e.g., Hazen*

*Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (noting that an employee who is younger than 40 may have worked for a particular employer for his entire career while an older worker may have just been hired). Mr. Wilson has not presented any evidence to rebut UT's contention that the "early career people" classification was merely a method for determining an employee's potential with the company, and not a proxy for age. Therefore the classification does not constitute improper age discrimination. *See Hazen*, 507 U.S. at 611; *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 302 (7th Cir.1996) (employer's consideration of "length of service" not discriminatory where it served not as a proxy for age, but rather helped employer determine an individual's value as an employee); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir.1994) (discharge of workers based on salary considerations not discriminatory even though salary and age are often correlated).

Mr. Wilson also argues that consideration of membership in the Leadership Group and advanced degrees is improper because they are not "business necessities" under 29 C.F.R. § 1625.7. This argument is frivolous. Section 1625.7 is simply the implementing regulation for section 4(f)(1) of the ADEA, which allows an employer to use an otherwise discriminatory selection criteria if the employer can demonstrate that the criteria amounts to a bona fide occupational qualification. *See* 29 U.S.C. § 623(f)(1); *see also Equal Employment Opportunity Commission v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1540–41 (2nd Cir.1996). These provisions of the ADEA and its implementing regulations only come into consideration when the employer's practices have been found to violate the ADEA. As shown above, UT's actions are not prohibited under the act and there-

fore UT need not show any sort of business necessity for its selection criteria.

Finally, Mr. Wilson argues that UT presented false reasons for not transferring him. *See Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 890 (7th Cir.1997) (pretext is shown by demonstrating that employer did not honestly believe the reasons it gave for its actions). In support, Mr. Wilson argues that UT responded to his EEOC charge by providing different rationales for not transferring him. Specifically, Mr. Wilson notes that UT sent a letter to the EEOC claiming that the vacancies at issue were filled as a result of "prior commitments" or were "not compatible with [Mr. Wilson's] skill set." Mr. Wilson claims that UT has contradicted this letter by raising the advanced degrees and Leadership Group membership issues before the courts. He argues that such a contradiction demonstrates pretext and therefore could support a jury verdict for him. In support, Mr. Wilson cites *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), which held that a prima facie case and showing of pretext may in some cases permit a trier of fact to find unlawful discrimination even in the absence of independent evidence of discrimination.

We need not consider this argument, because UT did not contradict its statements to the EEOC. The UT officials who gave depositions stated that some of the newly hired managers who were not substantially younger than Mr. Wilson had been hired because of prior commitments, and that Mr. Wilson did not have the proper skills for some of the positions.

Mr. Wilson also argues that UT's claim that it chose the substantially younger people because they belonged to the Leadership Group is contradicted by deposition testimony of Thom Polera in another discrimination case brought against UT. *See Howard v. Lear Corp. EEDS and Interi-*ors, 234 F.3d 1002 (7th Cir.2000). In that case, UT refused to promote another human resources employee to human resources manager at one plant. Mr. Wilson introduced an excerpt of Polera's testimony justifying the decision not to promote in which Polera notes that the current manager at that plant also covered another plant and had 25 years of experience in management. Mr. Wilson contends that the situation in *Howard* contradicts UT's position that the Leadership Group promotes the hiring of "early career people."

Mr. Wilson provides no support for his contention that UT's claims in unrelated litigation has any bearing in this case. Furthermore, Polera's statement about the manager's experience appears to have had little importance in *Howard,* as Mr. Wilson cites only one sentence of testimony about experience and this court's opinion in *Howard* did not state that UT relied on the current manager's experience as a reason for its actions.

For the foregoing reasons, we AFFIRM the grant of summary judgment to UT.