Seth A. **WILLIAMS**, Plaintiff

v.

**AP PARTS, INC.**, Defendant

No. 3:01CV7544.

United States District Court,
N.D. Ohio,
Western Division.

March 3, 2003.

Seth A. Williams, Toledo, OH, Pro Se.

Andrew Baran, Cox, Hodgman & Giarmarco, Troy, MI, Barbara J. Arison, Frantz Ward, Cleveland, OH, for AP Parts, Inc., Defendant.

## ORDER

CARR, District Judge.

This is an employment discrimination case in which plaintiff Seth A. Williams alleges he was discriminated against at his job with AP Parts, Inc. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendant's motion shall be granted.

## BACKGROUND

In 1998, plaintiff began employment at the Toledo, Ohio, manufacturing plant of Faurecia Exhaust Systems, Inc. (previously AP Parts, Inc.).

On May 8, 2000, plaintiff received a written reprimand for "absenting himself during working hours without permission." Def.'s Ex. C. On May 11, 2000, plaintiff filed a grievance with his union challenging the write-up as discrimination and harassment.

On June 2, 2000, while the first grievance was pending, plaintiff received a second write-up for "absenting himself from

working hours without permission." Def.'s Ex. E.

Under defendant's work rules, the second infraction called for a three day suspension. Defendant's long-standing practice, however, was to defer any disciplinary action while a grievance was pending. Therefore, plaintiff was not suspended as a result of the second write-up.

On June 20, 2000, plaintiff injured his finger and was unable to work. Shortly thereafter, he returned to work in a light duty position but reinjured himself on July 22, 2000. In December, 2000, plaintiff returned to his light duty position. In February, 2001, plaintiff was laid off because there was no work for him within his work restrictions.

Defendant had substantial permanent reductions in force in 2001 and eventually closed in 2002. Employees affected by the 2001 layoffs were offered a voluntary severance agreement. Plaintiff executed one of these agreements in November, 2001.

In October, 2001, plaintiff brought this suit alleging he was "subjected to disparate terms and conditions of employment ... because of his race." Plaintiff's Complaint at ¶ 7. Defendant moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

Plaintiff claims that defendant subjected him to unlawful discrimination based on race under Title VII, 42 U.S.C. § 2000e–2(a)(1).

Title VII provides, "It shall be unlawful employment practice for an employee—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...."

Where the plaintiff does not have direct evidence of discrimination, courts use a burden-shifting approach. The Supreme Court explained:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

To establish a prima facie case of race discrimination under *McDonnell Douglas* and *Burdine,* the plaintiff must prove: 1) he is a member of a protected class, 2) he was subjected to an adverse employment action, 3) he was qualified, and 4) he was treated differently than similarly-situated male employees for the same or similar conduct. *See Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir.1999) (citing *Mitchell,* 964 F.2d at 582–83)).

Defendant argues plaintiff fails to show evidence that he suffered a sufficiently adverse employment action. Assuming plaintiff could establish a prima facie claim, defendant also argues that any disciplinary action against plaintiff was based on good faith, non-discriminatory reasons.

## I. Adverse Employment Action

■ An adverse employment action is a "materially adverse change in the terms and conditions of ... employment." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir.1999). In *Hollins,* the Sixth Circuit stated:

> [T]he Seventh Circuit explained the requirements for establishing a materially adverse employment action in the context of an age discrimination case:
>
> > [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (citing *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)); *see also Black v. Columbus Pub. Schs.,* 124 F.Supp.2d 550, 565 (S.D.Ohio 2000) ("The United States Supreme Court has defined an adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the denial of a raise or promotion.' ") (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Plaintiff argues that he "suffered discipline for being out of his work area when Caucasian employees were allowed to leave the work area." Plaintiff's Complaint at ¶ 7.

Discipline can constitute an adverse employment action if it is a "materially ad-

verse change in the terms and conditions of [plaintiff's] employment." *Hollins,* 188 F.3d at 662.

As this court explained in *Rose v. Buckeye Telesystem, Inc.,* 181 F.Supp.2d 772 (N.D.Ohio 2001):

> discipline constitutes an adverse employment action when it involves suspension from work for several days or when the suspension is without pay. *See e.g., Russell v. Board of Trs. of Univ. of Ill.,* 243 F.3d 336, 341 (7th Cir.2001) (suspension for five days without pay was an adverse employment action); *Biolchini v. General Elec. Co.,* 167 F.3d 1151, 1154 (7th Cir.1999) (one-week disciplinary suspension was a materially adverse employment action); *Silk v. City of Chicago,* 194 F.3d 788, 800 (7th Cir.1999) (five-day disciplinary suspension was materially adverse).
>
> Discipline can also be an adverse employment action when disciplinary write-ups affect an employee's opportunity for promotion and pay raises, and may place an employee on probation. *See e.g., Cunningham v. Kansas City Star Co.,* 995 F.Supp. 1010, 1025 (W.D.Mo.1998) ("There is sufficient evidence in the record to support the finding that disciplinary 'write-ups' adversely affected plaintiffs' working conditions in that write-ups affected plaintiffs' opportunities for promotions."); *Duran v. N.M. Dep't of Labor,* 143 F.Supp.2d 1278, 1285 (D.N.M.2001) ("There is no evidence that the warning letter or inability to attend the Governor's Conference ... affected Plaintiff's employment ... by leading to future discipline or preventing future advancement. Therefore, these disciplinary actions did not sufficiently alter Plaintiff's compensation, terms conditions, or privileges of employment,

> to constitute an adverse employment action.") (citation omitted).
>
> However, " 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.' " *Scroggins v. Univ. of Minn.,* 221 F.3d 1042, 1045 (8th Cir.2000) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999) (en banc)). One court has declined to expand the definition of adverse employment action to include employee reprimands. *See Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.1997) ("To hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future. Such expansion is unwarranted.") (emphasis in original) (citation omitted).

*Id.* at 776–77.

Defendant's two write-ups of plaintiff do not constitute adverse employment action. Plaintiff was never suspended from work. His second reprimand provided for a suspension, but it was delayed due to his pending grievance. Plaintiff then injured his finger. After he returned to work in a light duty position, he was eventually laid off due to a reduction in defendant's work force. Plaintiff's employment was terminated when he signed the severance agreement.

There is also no evidence that plaintiff's write-ups affected his opportunity for promotion or pay raises. Plaintiff was merely cited for not following work rules—which courts have held is not adverse employment action.[1]

---

1. In his complaint, plaintiff also states: "As a proximate result of said intentional discrimination, Plaintiff has suffered the loss of her

[sic] job standing, back and future wages and benefits, and he has suffered great mental and emotional stress, anxiety, humiliation, and

Plaintiff therefore has not established a prima facie case of discrimination because the discipline he received did not materially affect his employment.

## II. Legitimate Non-discriminatory Reason and Pretext

■ Even if plaintiff has established a prima facie case, defendant can meet its burden by producing a non-discriminatory reason for disciplining plaintiff.

The two reprimands plaintiff received were issued by one of defendant's supervisors, Paula Camargo. In her affidavit, Camargo testified that plaintiff received the first write-up because he was out of his department and talking to two repairmen during his work time. Camargo stated:

I called [plaintiff's] supervisor and asked if he knew where Mr. Williams was. He told me Mr. Williams was supposed to be cutting scrap. When I informed him what Mr. Williams was actually doing, he asked me to tell Mr. Williams to come see him immediately. I went over to Mr. Williams and asked if his supervisor knew where he was. Mr. Williams said he did. At that point, I told Mr. Williams that I just had to tell his supervisor where he was. He then became verbally abusive to me. I decided to give him a written reprimand in accordance with our work rules. One of the employees with whom Mr. Williams was speaking was African–American, the other was white. They were not disciplined because they were not away from their work area or avoiding doing their jobs at that point. Moreover, they did not become verbally abusive towards me. My decision to discipline Mr.

Williams was not based in any way on his race.

Def's. Ex. G.

Concerning the second reprimand, Camargo testified:

On that day, Mr. Williams was assigned to work as a welder in Department 206 under my supervision. Production in the department was slow during the day. When I questioned employees as to the reason why, a number of them gave me information that the slowdown was due to the behavior of Mr. Williams. One employee indicated to me that Williams had told him to slow down on his work, and a second told me that Williams asked her why employees were working so hard, and said that they should not work so hard.

Several employees in the department told me that Williams did not return to our department for 20 to 30 minutes after the lunch period ended. The line could not run in his absence. Based on all the information I received, I believe it was clear that Williams had violated the rule about prohibiting employees from absenting themselves from work without authorization. For that reason, I gave him a reprimand on June 2, 2000. The disciplinary action taken was in accordance with the rules of the Toledo manufacturing plant and was not based in any way on the considerations of Mr. Williams's race.

Def.'s Ex. G.

Defendant has satisfied its burden of producing a non-discriminatory reason for disciplining plaintiff.

A plaintiff establishes pretext by showing the defendant's legitimate nondiscriminatory reason: 1) had no basis in fact; 2)

---

embarrassment." Plaintiff has presented no evidence that he was terminated because of racial discrimination. In fact, the only evidence in the record is that plaintiff signed a severance agreement with defendant—thus terminating his employment.

did not actually motivate the defendant's actions; or 3) was insufficient to warrant the defendant's actions. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

Plaintiff argues Camargo was not his immediate supervisor and therefore had no authority to reprimand him. Concerning both incidents, plaintiff claims his machine had broken down and the maintenance man informed him that twenty or thirty minutes were required to fix the machine. Plaintiff testified: "Because I was extremely fatigued, hot, thirsty and tired, I went to the restroom to get some water. It was very hot in the plant and being diabetic causes me to suffer dehydration and exhaustion in extremely hot working conditions.... I acted reasonable to use downtime to get additional rest and water I need to remain healthy and productive due to being diabetic." Plaintiff's Affidavit at 2. In each instance, plaintiff claims Camargo harassed him about getting water and using the restroom.

Plaintiff offers nothing further to support his claim of racial discrimination in response to defendant's summary judgment motion. Rule 56(e) of the Federal Rules of Civil Procedure requires a party opposing summary judgment to present some type of evidentiary material in support of its position. Nowhere in plaintiff's pleadings does he offer any evidence that Camargo's acts were racially motivated or that her alleged reasons for the reprimands did not actually motivate her actions.

Thus, even if plaintiff could establish a prima facie case of race discrimination, his claim cannot survive a motion for summary judgment because defendant has shown that the reasons for plaintiff's discipline were non-discriminatory. I find, therefore, that plaintiff fails to present evidence on which a reasonable jury could return a verdict finding that defendant violated Title VII.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

Defendant's motion for summary judgment be, and hereby is, granted.

**So ordered.**