

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2006

# Moore v. Univ Pgh Higher Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4094

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Moore v. Univ Pgh Higher Ed" (2006). *2006 Decisions.* Paper 914.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/914

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4094
_____

PATRICIA M. MOORE, M.D.
                                            Appellant

v.

UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH
SYSTEM OF HIGHER EDUCATION; UNIVERSITY OF
PITTSBURGH PHYSICIANS; M.D. STEVEN T. DEKOSKY,
individually and in his official capacity as chairman of
Department of Neurology; M.D. ARTHUR S. LEVINE, individually
and in his official capacity as the Dean, School of Medicine;
UPMC HEALTH SYSTEM
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 02-cv-01734)
District Judge: Honorable Terrence F. McVerry
_____

Argued on May 18, 2006

Before:  RENDELL and VAN ANTWERPEN, <u>Circuit Judges</u>,
and ACKERMAN*, <u>District Judge</u>.

(Filed: June 12, 2006)

_____

    *  Honorable Harold A. Ackerman, Senior Judge of the United States District Court
    for the District of New Jersey, sitting by designation.

James B. Lieber   [ARGUED]
Lieber & Hammer
5528 Walnut Street
Pittsburgh, PA   15232
*Counsel for Appellant*
*Patricia M. Moore*

Martha H. Munsch  [ARGUED]
Reed Smith
435 Sixth Avenue
Pittsburgh, PA  15219
*Counsel for Appellees*
*University of Pittsburgh of the Commonwealth*
*    System of Higher Education;*
*M.D. Steven T. Dekosky, individually*
*    and in his official capacity as chairman*
*    of Department of Neurology;*
*M.D. Arthur S. Levine, individually*
*    and in his official capacity as the Dean,*
*    School of Medicine;*
*UPMC Health System*

John J. Myers
Christine M. Gass [ARGUED]
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA   15219
*Counsel for Appellees*
 *University of Pittsburgh Physicians*

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

Patricia Moore appeals from the trial verdict against her and the District

Court's denial of her post-trial motion on her claims for alleged sexual discrimination

2

against the University of Pittsburgh ("University") and the University of Pittsburgh Physicians ("UPP") under Title VII and the Pennsylvania Human Relations Act, and her claim for alleged breach of contract against the University.[1]

Moore called 26 witnesses over the course of 8 trial days to prove that the University and UPP had discriminated against her on the basis of gender, and that the University had breached its contract with her when her faculty appointment in the Department of Neurology and her clinical appointment with UPP were not renewed.

Defendants called 13 witnesses who testified as to the legitimate, nondiscriminatory basis for the non renewal, which could be characterized as Moore's difficult interpersonal relations with staff as well as her failure to establish a satisfactory research program.[2]  There was extensive testimony as to both sides of both of these issues.

Moore assigns error to four evidentiary rulings of the District Court.  We will address each in turn.

_____

[1] Plaintiff's complaint contained fourteen counts, but all but three were disposed of on summary judgment.   Moore does not appeal the summary judgment order of the District Court.

[2] Dr. DeKosky, the apparent decision-maker, summarized his reasons for terminating Moore, testifying:  "As far as I was concerned, Doctor Moore did not perform adequately with respect to how she dealt with, especially, the people in the clinic, who were her underlings and she produced nothing in the laboratory.  So, my decision at that point, was there was no reason to maintain her on the faculty here."  Tr. Trans. 3/31/05 at 196, App. 1786.

3

### 1. Exclusions of testimony of three patients.

Moore complains that the District Court erred by refusing to permit testimony from three of her former patients, who would have testified as to their positive personal interactions with Moore and certain problems in the clinic caused by staff members other than Dr. Moore.

Moore analogizes her case to that of *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188 (3d Cir. 1994). In *Glass*, the plaintiff alleged employment discrimination on the basis of race and age. At trial, the plaintiff presented evidence that he was better qualified for the position but was rejected in favor of less qualified, younger, white candidates. *Id.* at 193. The employer justified its failure to promote Glass by reference to his purportedly poor performance during a stint at a previous plant. *Id.* Glass repeatedly attempted to introduce evidence of a hostile racial environment at that previous plant and its impact on his performance, but this evidence was excluded by the district court. On appeal, we held that the district judge erred in excluding the evidence of racial harassment and found that the error was not harmless, reversing and remanding for a new trial. *Id.* at 189. We found that the evidence relating to Glass's explanation for his poor performance was relevant to whether the non-discriminatory reason asserted by the employer was in fact a pretext for age and race discrimination.

Moore urges that the testimony of Mr. Douglas, Ms. Byers, and Ms. Mehalik was wrongly believed by the District Court to relate to patient care, while it actually had to do with Moore's interactions with people. The latter was definitely at

issue in the trial.   At trial, following a proffer by Moore's counsel, the District Court ruled that the testimony would not be relevant.  Moore urges that this was error and that *Glass* requires us to order a retrial.  We disagree.

By way of proffer, Moore's counsel stated that Mr. Douglas would have testified to an event that occurred two months after the decision had been reached not to renew Dr. Moore.  The District Court held that, given the time frame, Mr. Douglas' testimony would not be relevant.   We find no error in this ruling.

With respect to Ms. Byers and Ms. Mehalik, although not permitted in her case in chief, these witnesses were called by Dr. Moore in rebuttal.  On rebuttal, both Ms. Byers and Ms. Mehalik testified regarding the fact that Dr. Moore was in different examination rooms each time they saw her.  Ms. Byers also testified regarding negative experiences she had with the clinic staff in scheduling appointments, and in particular with Melanie Mielo.  Tr. Trans. 4/4/05 at 187-94, app. 2071-8; Tr. Trans. 4/4/05 at 194-6, app. 2081-3.

While we disagree with the District Court's reasoning in excluding the evidence (which was explained upon post-trial motion as relating to the fact that their testimony pertained to the standard of Moore's care of patients, and that this was not at issue in the case (Memorandum Opinion 8/03/05, page 7)), we conclude that the exclusion was nonetheless harmless.   Patients Byers and Mehalik testified in rebuttal, and there was a great deal of evidence regarding patient complaints about the clinic and its staff through other witnesses.   While the District Court arguably should have

5

permitted Byers and Mehalik to testify as to their positive personal interactions with Dr. Moore, such testimony would have been merely cumulative. In particular, we observe that Michael Oliverio, a third patient, was permitted to testify in Moore's case-in-chief. Mr. Oliverio wrote a letter, which was admitted in evidence and read to the jury, thanking Dr. Moore for her thoroughness, kindness and patience, and expressing his pleasure at having been her patient. Tr. Trans. 3/22/05 at 37-8, app. 744-5. He testified that the letter accurately reflected how he felt about his experience with Dr. Moore. *Id.* In addition, Dr. Bartley Griffith, whose wife was a patient of Dr. Moore's, testified that he thought Moore was exemplary in taking care of his wife. He stated

> [Dr. Moore's] approach to my wife seemed to be very personal, seemed to be one which fostered hopefulness, very important in a patient with a chronic disabling disease. She was always available, left us a number of contact numbers including her home. So, I felt very comfortable with Dr. Moore's involvement. I've had a number of other neurologists who have taken care of my wife over our period now together with this disease since she was really 17 years old. So, I've been with my wife since I was 21 years old as her husband. I think I know a reasonable neurologist when I see one in terms of taking care of my wife, and you know, I thought Dr. Moore was exemplary.

Tr. Trans. 3/29/05 at 34, app. 1305. Furthermore, counsel's proffer did not indicate any specific experience of Ms. Byers or Ms. Mehalik that was unusual or critical to Dr. Moore's case. In light of the ample testimony regarding Moore's positive interactions with patients, we conclude that any testimony by Ms. Byers and Ms. Mehalik was merely cumulative and "it is highly probable that the error did not affect the outcome of the

6

case." *Glass*, 34 F.3d at 191.

## 2. Admission of evidence from staff members.

Moore contends that three staff members were improperly permitted to testify regarding problems they experienced with Dr. Moore, because these incidents were not reported to Dr. DeKosky, the decision maker, and thus did not serve as the basis for Moore's nonrenewal. Moore relies on a series of cases that hold that evidence regarding reasons that did not form the basis for the decision at issue is not relevant as to whether the defendant had a "legitimate" reason for having taken the challenged action. *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69 (2d Cir. 2005); *Kendrick v. Penske Transp. Service*, 220 F.3d 1220 (10th Cir. 2000); *Shorter v. ICG Holdings, Inc.*, 88 F.3d 1204 (10th Cir. 1999); *Biolchini v. General Electric Co.*, 167 F.3d 1151 (7th Cir. 1999); *Hammel v. Eau Galle Cheese Factory*, 2003 WL 21067091, at *5 (W.D. Wis. 2003). Moore urges that, as such, they are nothing more than "other acts" evidence prohibited by Rule 404(b). We disagree.

First, it is not entirely clear that decision makers, including Dr. DeKosky, did not learn of these incidents. The evidence on this issue is equivocal. The pattern of behavior exhibited by Moore, as described by the staff witnesses came to the attention of management and Dr. DeKosky. Melanie Mielo, the clinic manager, testified that she informed the departments' vice chairs and the department administrators that the staff was tense and anxious on clinic days when Dr. Moore was scheduled to see patients because

7

she was often unreasonable and disrespectful to the staff. Tr. Trans. 3/30/05 at 201, 203, app. 1658, 1660. In addition, Ms. Boyd also testified that she complained to the department administrator about a negative encounter with Dr. Moore. Tr. Trans. 3/30/05 at 84, app. 1563. Dr. DeKosky testified that he received reports from the department administrator about altercations and disagreements between Dr. Moore and the clinic staff. Tr. Trans. 3/31/05 at 175-6, app. 1765-66.

Second, "other acts" evidence that is prohibited by Rule 404(b) is evidence of unrelated acts that would be offered to prove that a person acted in similar fashion in the instant setting. *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 520 (3d Cir. 2003). However, here, the acts as to which the three staff members, Ms. Trimber, Ms. Boyd, and Ms. O'Leary, testified were precisely the acts complained of. Moore urges that *Becker v. ARCO*, 207 F.3d 176 (3d Cir. 2000), is controlling. However, in that case, the challenged testimony concerned previous acts. As we explained, the problem was that the jury would likely draw an "inference that ARCO was likely to have fabricated customer complaints and other performance problems in Becker's case merely because ARCO had previously engaged in similar impropriety . . ." 207 F.3d at 191. This is not the case here.

Moreover, the testimony of these three individuals was introduced as part of the defendant's case after Moore had testified to positive interactions with staff, specifically including Ms. Boyd. Tr. Trans. 3/17/05 at 92, app. 389 ("I thought I had very good relations with Marlene Boyd...."). Moore also testified that she was unaware of any

8

incident involving her that caused a decline in staff morale. Tr. Trans. 3/16/05 at 170, app. 271. Moore further testified that she did not criticize the staff publicly, and that her argument with Mindy Losego, a clinical research coordinator, was the only time she had raised her voice to any employee at the University of Pittsburgh. Tr. Trans. 3/21/05 at 80, app. 556; Tr. Trans. 3/1705 at 10, app. 306. In addition, Moore elicited testimony about her demeanor and interactions with the clinic staff from a number of witnesses. Given all of this, we conclude that Moore opened the door to rebuttal of this type, and therefore the testimony of Ms. Trimber, Ms. Boyd, and Ms. O'Leary was permissible.

### 3. Introduction of letter from Vanderbilt.

Moore testified on direct examination that she had been employed from 1981 to 1987 at Vanderbilt University and that: "The department at Vanderbilt would have been delighted had I stayed there with my RO1 [grant], but I was eager to move to a place where I thought there would be a larger group of people with whom I could work." Tr. Trans. 3/16/05, app 186-87.

On cross-examination, defense counsel asked whether it was true that Moore's contract with Vanderbilt had not been renewed. Plaintiff answered:

> It is the practice of every university that I have been in to discuss with a faculty member the plans for both the faculty member and the department a year prior to the end of a contract. And at that time, Dr. Fenichel, who was the chairman of the department, and I sat down and talked. And he mentioned to me that.
>
> ....

9

At the time that Dr. Fenichel and I had the discussion, I mentioned to him that I wanted to leave to go someplace where I would have more collegial interactions with laboratory workers. And so we agreed that I would leave voluntarily and he wrote he would not renew my appointment. Subsequent to that, I did receive my RO-1 grant and if I had wished to stay, according to Dr. Fenichel, they would have reappointed me.

Tr. Trans. 3/17/05 at 108-9, app. 405-6.

Defense counsel then confronted Moore with a letter from Vanderbilt University dated April 3, 1986, addressed to her, which stated:

This letter is to document our prior conversation. Your appointment on the faculty will not be renewed when your present three-year term expires on June 30, 1987.

*Id.* at 406-07.

Moore's counsel objected on the basis of hearsay, which was overruled by the District Court but which Moore still urges on appeal. We agree with the District Court that the letter was properly used to test Moore's credibility in light of her equivocal response, to demonstrate that she had in fact been told by Vanderbilt that her contract was not being renewed and that, as she ultimately testified, she was aware that her contract had expired. Furthermore, Moore admitted the essence of what the letter stated independently upon further questioning by counsel. Tr. Trans. 3/17/05 at 113-4, app. 410-11. Accordingly, any error was harmless.

4.      **Melanie Mielo's communication to Dr. DeKosky**

While questioning Dr. DeKosky, Moore's counsel attempted to introduce a

10

portion of the doctor's deposition concerning a statement made to him by the clinic manager, Melanie Mielo, after Dr. DeKosky had received Moore's EEOC charge. The District Court excluded the evidence as having been made in anticipation of litigation. Counsel did not make an offer of proof, nor was the substance of the statement apparent from the record at the time, nor is it part of the record on appeal. However, counsel apparently agrees that it had to do with Mielo's failure to accede to Dr. Moore's wish to have the same examining room, as an accommodation to her vision problems. Mielo's testimony at trial was to the effect that Moore had made such a request to Mielo, although Mielo stated that she was unaware of Moore's vision problems. At her deposition, she had answered "No," to the question of whether Moore had asked her "to make sure she had the same exam room because she had problems with her eyesight." Tr. Trans. 3/30/05 at 181, app. 1638.

During Dr. DeKosky's testimony, on cross-examination, Moore's counsel attempted to impeach Mielo's credibility by introducing Dr. DeKosky's previous deposition testimony, in which he stated that Ms. Mielo had told him shortly after Moore's nonrenewal that she knew about Moore's visual problems. The District Court did not permit this. Moore's counsel urges that the evidence would demonstrate gender discrimination, although this is not readily apparent, nor was that aspect ever explained to the District Court.

We credit Moore's argument on appeal that the District Court's reason for excluding the evidence, namely, that it was in anticipation of litigation, was not proper,

11

but we conclude, nonetheless, that there was no harmful error in excluding the evidence.

Given the dubious probative value of this line of questioning as it pertained to gender discrimination, and the lack of any offer of proof as to the point Moore sought to make, we find no abuse of discretion in the District Court's ruling. Once the disability discrimination count was removed from the case on summary judgment, this line of questioning could only be relevant as to gender discrimination, and we find its probative value, even if it were arguably permissible impeachment, too attenuated to require its admission.

Accordingly, we will AFFIRM the order of the District Court.